UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>GORDON OWEN MILLER,<br><br>Movant. | No. 2:15-cr-0081 DC AC P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Movant, a federal prisoner proceeding pro se, brings a motion under 28 U.S.C. § 2255 to vacate his conviction and sentence. ECF No. 196. The United States filed an opposition, ECF No. 208, to which movant did not reply.

I. BACKGROUND

A. Overview

Gordon Miller, Donnie Phillips, and Phyliss Mosher were charged in a twelve count indictment with conspiring to distribute methamphetamine between June 5, 2014, and April 8, 2015, distributing methamphetamine on eight occasions during the conspiracy, and two counts of possessing methamphetamine with the intent to distribute it. ECF No. 12. Mosher pleaded guilty to the conspiracy charge; Miller and Phillips went to trial.

////

////

B. <u>Evidence at Trial</u>

The jury heard evidence of the following facts.[1]  An undercover DEA agent bought methamphetamine from Mosher on eight occasions between June 2014 and April 2015.  During the first controlled buy, on June 5, 2014, Phillips was identified as Mosher's source of supply.  Surveillance and telephone records then revealed that Phillips was the source of supply for several subsequent transactions between Mosher and the undercover agent during July and September 2014.

On February 4, 2015, the agent conducted two separate transactions with Mosher.  After the first deal, Mosher explained that the second delivery would be delayed because her source's partner was in Hayward.  Miller was in Hayward that day, purchasing a car.[2]  Later that day, Mosher told the agent that she was with her source (Phillips), who could not obtain the methamphetamine from his partner until that evening.  Agents subsequently observed Phillips place a bag of money given by the agent to Mosher into the trunk of his car and followed him to a bar, where Phillips met with Miller.  From there, Miller and Phillips drove to an isolated area, where they interacted briefly with the occupant of another car before returning to the bar.  Around that time, Mosher called the agent to inform him that her source had the drugs and she was going to meet him in Vallejo.  When Phillips left the bar, he travelled to a Vallejo apartment, where he removed items from his car and met with Mosher.  Mosher delivered methamphetamine to the agent later that evening.  There was extensive phone activity between Miller's and Phillips's phones on February 4, 2015.

On April 7, 2015, Mosher and Phillips were arrested in a "buy-bust" operation.  Miller, who had been in regular telephone contact with Phillips in the days leading up to April 7, frantically sought information on Phillips's whereabouts and asked Phillips's girlfriend for Mosher's phone number.  Agents tracked GPS data for Miller's phone in order to execute a

---

[1] This brief summary is adapted in substantial part from the memorandum opinion of the U.S. Court of Appeals for the Ninth Circuit, ECF No. 187. Movant's detailed factual summary is at ECF No. 196, pp. 15-28. The government's detailed summary is at ECF No. 208, pp. 9-18.
[2] The jury learned that movant bought and sold vehicles at auctions, mostly in Tracy and Hayward.

2

federal warrant for his arrest. Ultimately, Miller fled from law enforcement with his own girlfriend at a high rate of speed in his girlfriend's car, which had $29,600 in cash concealed in a spare tire. Miller's girlfriend told officers it was not her money. Miller's phone was seized. It contained three of Phillips's known phone numbers saved as contacts, as well as deleted text messages that had been exchanged earlier that day with Phillips's girlfriend about the search of Phillips's house and Miller's request for Mosher's contact information ("could you txt me phillises number?"). Agents also seized a post-it note that said "Rick 510 860 9144 / Phillis."[3]

A subsequent search of Miller's remote property revealed a wooden chest with a false bottom, in which agents discovered $14,380 in cash. In 2014, a year in which Miller reported only $1,653 in income, he travelled to Mexico three times.

Between October 24, 2014, and March 21, 2015, Miller's and Phillips's cell phones were in contact with each other approximately 300 times. A high volume of calls and texts was documented during the periods of September 9-12, 2014; February 3-5, 2015; and April 3-7, 2015.

C. Outcome

The jury found Miller guilty of conspiring to distribute methamphetamine, two counts of distribution on February 4, 2015, and two counts of possessing methamphetamine with intent to distribute on April 7, 2015. He was sentenced to 240 months imprisonment.

D. Appeal

Miller timely appealed, challenging the sufficiency of the evidence against him, evidentiary rulings, and various aspects of sentencing. The Ninth Circuit affirmed the judgment in all respects. ECF No. 187.

II. THE MOTION AND SUPPORTING FACTUAL ALLEGATIONS

Movant presents a single claim for relief, alleging that his trial attorney rendered ineffective assistance of counsel in violation of the Sixth Amendment. ECF No. 196 at 4. Specifically, movant alleges that the following acts and omissions rendered the representation

---

[3] The exhibits are reproduced at ECF No. 208, p. 18.

3

constitutionally deficient: (1) failure to call co-defendant Phyllis Mosher to testify that she did not know movant; (2) failure to introduce certain evidence that movant had lawful income from the sale of vehicles; (3) failure to object to introduction of the post-it note that was used by the prosecution to link movant to Mosher; (4) failure to object to statements in the government's closing argument; and (5) failure to object to the display of the three defendants' "mug shots" together throughout the trial.  Id. at 32-38.

### III. STANDARDS FOR REVIEW UNDER 28 U.S.C. § 2255

A federal prisoner making a collateral attack on the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence.  Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988).  Under section 2255, the district court may grant relief if it concludes that a sentence violates the Constitution or laws of the United States.  United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999).  Both the grounds for relief and the scope of the remedy in a section 2255 proceeding are identical to those available to state prisoners under 28 U.S.C. § 2254, the federal habeas corpus statute.  Davis v. United States, 417 U.S. 333, 343-44 (1974).

The district court must grant a hearing to determine the validity of a petition brought under section 2255, unless the record conclusively shows that the prisoner is entitled to no relief.  United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255).  In other words, an evidentiary hearing is required if (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2) the petition, files, and record of the case cannot conclusively show that the petitioner is entitled to no relief.  United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004).  Relief may be summarily denied without a hearing if the motion contains no more than conclusory allegations.  United States v. Quan, 789 F.2d 711, 715 (9th Cir. 1986); see also Howard, 381 F.3d at 879.

### IV. DISCUSSION

A. Legal Standards Governing Ineffective Assistance of Counsel Claim

The Sixth Amendment guarantees "the right to effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970).  To establish a constitutional violation based on

ineffective assistance of counsel, a movant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). In assessing counsel's performance, the court must apply a strong presumption that counsel's representation fell within the wide range of reasonable professional assistance. Id. at 689. Courts must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Prejudice means that the error actually had an adverse effect on the defense. Id. at 693. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. The court need not address both prongs of the Strickland test if the movant's showing is insufficient as to one prong. Id. at 697.

### B. Analysis

For the reasons explained below, the court finds there is no need for a hearing on movant's ineffective assistance of counsel claim because the petition, files, and record of the case conclusively show that he is not entitled to relief. See Howard, 381 F.3d at 877.

#### 1. The Motion Does Not Establish a Prima Facie Case of Deficient Performance

Movant has not presented factual allegations which, taken as true, would rebut Strickland's presumption of reasonable performance. None of the alleged errors are inconsistent with the representation guaranteed by the Sixth Amendment, because none of them implicate the fundamental fairness of the proceeding. See Strickland, 466 U.S. at 696 ("the ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.").

Counsel's failure to call co-defendant Phyllis Mosher to testify at trial cannot have been outside the wide range of reasonable professional assistance, because the record conclusively demonstrates that she had refused to testify. Miller brought a pretrial motion to dismiss based on Mosher's refusal to testify for the defense, which counsel alleged was the result of prosecutorial machination. ECF No. 64. Mosher's lawyer told Miller's lawyer that she did not want to testify,

and that counsel would object to her doing so if she were subpoenaed. ECF No. 64-1. Given this information, Miller's lawyer can only have anticipated that if called, Mosher would invoke her Fifth Amendment rights. Counsel would have known that neither waiver of Fifth Amendment rights nor immunity from prosecution could be compelled. See United States v. Trejo-Zambrano, 582 F.2d 460, 464 (9th Cir. 1978). It was not unreasonable for counsel to forgo a demonstration of a witness "taking the Fifth." Moreover, Mosher's testimony that she did not know Miller simply would not have carried the exculpatory weight that movant urges; it was unnecessary for Miller to have had an independent relationship with Mosher in order to be criminally liable for working as Phillips's partner. The charges did not require, and the prosecutor did not allege, that Miller had provided any drugs directly to Mosher; the prosecution proceeded on the theory that movant worked behind the scenes with Phillips to obtain and provide methamphetamine for distribution at the street level. Failure to present evidence with little exculpatory value is not deficient performance.

      The same principle applies to the alleged failure to introduce evidence of lawful income. Movant faults counsel for failing to introduce the following specific evidence, which he alleges was in counsel's possession: (1) DMV records showing that movant was a licensed auto salesperson; (2) business records showing movant listed many cars for sale between 2012 and 2015; and (3) the testimony of two witnesses who did business with movant in relation to various vehicle sales and repairs. ECF No. 196 at 34-35 (allegations), 40-281 (supporting exhibits). However, the jury was provided evidence related to movant's auto sales business: (1) sales invoices from Copart Auto Auctions in Hayward, dated February 4, 2015; (2) testimony from the business manager of Golden Gate Auto Auctions that auto auction transactions are conducted in cash or by cashier's check; (3) the testimony of movant's girlfriend that he was actively involved in buying and selling cars at auction; and (4) approximately 700 text messages related to movant's auto dealing business. Counsel therefore had an ample evidentiary basis to counter the government's suggestion that movant lived beyond his means and must have had an illegitimate source of income. The additional evidence presented here would not have established the *amount* of legitimate income that movant earned during the relevant period, which was the issue the

prosecutor emphasized in the cited portion of closing argument.  See ECF No. 196 at 34 (quoting RT 1168).  Moreover, reasonable counsel could have concluded that making an even bigger issue out of movant's legitimate income stream and its amount would distract the jury from the central issues in the case, or might boomerang by creating the impressions that movant had dishonestly hid income to evade tax obligations.  Such a judgment call is well within the range of reasonable performance.  See Harrington v. Richter, 562 U.S. 86, 108-109 (2011) (not unreasonable for counsel to fail to develop and present evidence which could turn out to be fruitless, harmful to the defense, or distracting to the jury).

Counsel's failure to object to admission of the post-it note also falls far below the level of deficient performance.  First, there was no apparent basis for an evidentiary objection to this exhibit.  Movant alleges there was no foundation for the note, but there was testimony that it had been seized from movant at the time of his arrest.  Second, movant alleges that the post-it was prejudicially used to show he had a connection to Mosher, although the phone number actually was for a "Rick Sparks "and not Phyllis Mosher.  ECF No. 196 at 36.  Movant contends that counsel should have established that fact.  Id.  The exhibit itself, however, indicates on its face that the phone number belonged to someone named Rick: the name "Rick" and a phone number are written above a horizonal line that divides the post-it note in half, and the name "Phillis" is written below the line.  See ECF No. 208 at 18.  This subclaim is thus factually inconsistent with the record.  In any event, counsel does not perform deficiently by failing to make a futile objection.  See Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance [.]")

The failure to object to closing argument will rarely constitute deficient performance, because argument is not evidence and raising pointless objections can alienate the jury.  Accordingly, reasonable counsel might conclude that interrupting a prosecutor's closing should be avoided unless the argument is plainly improper.  See Cunningham v. Wong, 704 F.3d 1143, 1159 (9th Cir. 2013) (absent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct).  There were no egregious misstatements here.  Movant contends that the prosecutor

1  made false factual statements, ECF No. 196 at 36-37, but the cited portions of the transcript
2  clearly establish that the prosecutor was arguing about the inferences he wanted the jury to draw
3  from the evidence. That is not only permissible, it is what closing argument is for.
4      Finally, there was no legal basis for counsel to object to the display of the defendants'
5  photographs.[4] Movant alleges that it was prejudicial for the faces of the three alleged co-
6  conspirators to be shown together, because "[t]his would have subliminally linked the three
7  together in the minds of the jurors even though there was no evidence that Miller knew or even
8  met Mosher." ECF No. 196 at 38. Movant acknowledges that a poster board displaying the
9  photographs was taken down at defense counsel's request after its initial use, but alleges in
10 conclusory terms that the video monitors thereafter displayed the photographs "throughout the
11 trial." Id. at 37-38. Movant does not specify how frequently or for how long the photographs
12 were shown side by side, nor suggest any improper use of the images by the government. Each of
13 the photographs was admitted into evidence as relevant to the identifies of the participants in the
14 conspiracy, and they were used in questioning witnesses about the persons they had observed
15 during the course of the investigation. There was no basis for an objection, so counsel cannot
16 have performed deficiently.
17     In sum, none of movant's allegations amount to deficient performance within the meaning
18 of Strickland.
19         2.   The Motion Does Not Establish a Prima Facie Case of Prejudice
20     Because none of the alleged attorney errors rise to the level of unreasonable performance,
21 there is no need for findings on the prejudice prong of ineffective assistance. See Strickland, 466
22 U.S. at 697 (court need not address both prongs if the movant's showing is insufficient as to one
23 prong). However, the undersigned will briefly address movant's overarching argument that the
24 ////
25 ////
26
27 [4] As the government points out, these were not "mug shots" as movant describes them but DMV photos.
28

evidence against him was so weak that almost any error would likely have made a difference to the outcome. ECF No. 196 at 29.[5]

Miller overstates the weakness of the case against him. There was extensive evidence that Phillips was Mosher's source of supply for methamphetamine sales, that Phillips had a partner unknown to Mosher, and that Miller and Phillips had an ongoing relationship and were in frequent contact with each other. There was direct evidence that contact between Miller and Phillips spiked around the times of the controlled buys. There was direct evidence that Miller was in Hayward at the time that Phillips's unnamed partner was in Hayward. Most importantly, there was direct evidence that Miller met with Phillips at a bar on February 4, 2015, and travelled with him to a remote area where they appeared to conduct a transaction with a third party, at precisely the time that Phillips acquired the product Mosher had promised to the undercover agent and delivery of which had been delayed by Phillips's need to meet with his partner. Taken together, this evidence strongly supports the conclusions that Miller was the partner Mosher repeatedly mentioned to the agent, and that he participated directly in the February 2015 transactions.

There was no direct evidence that Miller personally possessed methamphetamine (or directly aided and abetted its possession) on April 7, 2015. As the Ninth Circuit recognized on direct review, movant's convictions arising from those transactions depended on inferences from "overlapping layers of evidence" that he had been involved in the sale. ECF No. 187 at 4.[6] Even

---

[5] The government treats this argument as a free-standing claim of insufficient evidence, and contends that it is barred by the law of case doctrine because it was rejected on appeal. See ECF No. 208 at 20-23. The § 2255 motion does not allege a violation of due process based on insufficient evidence, however. Rather, in support of his Strickland claim, movant argues in essence that counsel's otherwise minor errors were prejudicial because the evidence against him was so thin. The law of the case doctrine does not preclude movant's prejudice theory under Strickland. It is well established that the constitutional standards for insufficient evidence and Strickland prejudice are distinct. See Crace v. Herzog, 798 F.3d 840, 849 (9th Cir. 2015) (finding state court unreasonably applied Strickland by pronouncing that there can be no prejudice where there is evidence sufficient to support the jury's verdict).

[6] Inferences from circumstantial evidence are, of course, perfectly adequate to support a conviction. And once the jury found that Miller had conspired with Phillips during the relevant period and was the partner working with him to supply Mosher, that conclusion extended to Miller's liability on the April 2015 counts.

as to the April 2015 counts, however, there is little likelihood—let alone a reasonable probability—that the jury would have reached a different verdict if Mosher had testified that she didn't know Miller,[7] the defense had introduced additional evidence of lawful income from auto sales, the post-it note mentioning "Phillis" had been excluded from evidence, the photos of the defendants had not been so frequently on the video monitors, and defense counsel had made objections during the prosecution's closing arguments. None of those things would have affected the chain of inferential reasoning necessary to support the verdicts, or the jury's evaluation of the issue at the heart of the case: Miller's role as Phillips's partner in sourcing the methamphetamine that Mosher sold to the undercover agent.

Finally, to the extent that movant's prejudice argument relies on post-trial juror interviews, see ECF No. 196 at 35-36, that evidence cannot be considered. Fed. R. Evid. 606(b)(1) prevents this court from considering evidence of jurors' statements about their individual or collective deliberations.

CONCLUSION

For all the reasons explained above, the petition, files, and record of this case conclusively show that movant is not entitled to relief. See Howard, 381 F.3d at 877. Accordingly, IT IS HEREBY RECOMMENDED that the motion to vacate under 28 U.S.C. § 2255, ECF No. 196, be summarily DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If movant files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to

---

[7] There is no requirement that every co-conspirator have direct personal contact with every other co-conspirator. The government's proof of conspiracy relied on the separate relationships that both Miller as Phillips's partner and Mosher as a "downstream" distributor had with Phillips. Whether Miller and Mosher had ever met or done business directly was not legally or factually significant.

which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 22, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE